Please step up, identify yourself and whatever else you want to indicate. Good morning, your honors. Michael Orenstein, State Appellate Defender for Defendant Appellant Antonio Bryant. Good morning, your honors. Assistant State's Attorney Christine Cook on behalf of the people. Okay. Yeah, I'd like 205 minutes for rebuttal, please. Your honors, the co-defendant, Reese, did not shoot Dorsey. There was certainly evidence that Reese, as well as my client, fired shots at him. But Reese fired shots in one incident at about 10 o'clock and Dorsey was shot in the second incident at around 10.30 p.m. At about 10 o'clock, Officer Coleman testified he saw a shooting. About a minute later, Officer Coleman himself, after a short car chase, shot at the co-defendant and at Bryant. And also at about 10 o'clock, soon after they drove away, my client's car crashed and Officer Boyle found my client bleeding at the scene. Only at 10.30 p.m. was Dorsey shot. I should also note that on pages 2 and 21 of the state's brief, it says that Dorsey was shot after 10 p.m. Those statements, as far as I can tell, are not supported. The only reference in this whole thing about a specific time is made by the security individual, number one. And number two, this time frame is just a mask for irrelevance. Which is what? A mask for irrelevance. So I wouldn't waste my time on it. Well, I would say one thing about the security. If you had a video and two witnesses, I wouldn't waste my time. The crane video is pretty accurate. And I have to also say, why didn't you submit it? That's explained in the state brief. It is before the court. I did submit it. Now, I submitted it late. Now, the reason I did not submit it is I forgot to file a motion. It was bound up in the court defendant's brief, and I forgot to file that. But we have the related testimony to it from the witnesses who were on the scene. The state trooper in the off-duty cap. That's true. You have that. And now you have the video, because you accepted my motion. You admitted it into the record. So it's all there. So I do need to say something about the security guy. The interesting thing about that is the security guy was asked, did you do the shots at 10 o'clock or 1030? Which is a very strange way of asking it. Now, the other ones all said 10 o'clock, and I would say that the state had to ask that. They had to do that because their testimony at the time would have been locked in. Because with each of those incidents, there would have been a call to the 911 or dispatch. The officer called the 911 after he saw the shooting. The trooper called, and it shots fired. And Officer Boer responded to a call at about 10 o'clock. So I would say that it's very clear that one was at 10 o'clock and the other was at 1030. As far as the video, the video shows the shooting, but it does not show Dorsey. It does not show any victims being shot. So I don't see how the crane high school video impacts our argument in any way. So aside from that, also, we used to not shoot Dorsey because Dorsey wasn't the person that Coleman saw. Coleman said his alleged victim said, that MS shot me. Dorsey described no such thing. And when he realized he was shot, it was when he first walked in the door. He could not have realized he was shot before knowing it. It seems that your argument here and your argument in your rather well-written brief can be summarized on the sufficiency issue as saying that there were some inconsistencies between witnesses as it relates to time and certain events in these two separate but related shooting episodes. Is that correct? That is correct. I would not characterize them as inconsistencies. I would say they are perfectly consistent and they do describe two separate shootings. But other than that, that is correct. Okay. Well, then, as I would say, as a Southside, explain that one to me. How does it mean that there are two different unrelated shootings? Because there was one shooting at 10 o'clock that Coleman saw and there was a second shooting at 10.30 p.m. that Dorsey experienced. And one described one and one described the other. And aside from the fact that it was all very common, there is no reason to think that it was the same one. There was obviously a gang war that day. And there is nothing particularly surprising about the idea that there might be two shootings on the same street within a half-hour period. Okay. What about the... Well, go ahead. Go ahead. Okay. So another point was that Coleman said his victim was lying on the ground and Dorsey said he dropped behind his car at home. Dorsey's victim was lying behind... while Dorsey was on the west side. Finally, before hearing shots, Dorsey saw a person in his red car across the street. Brides are no such thing. So in summary, any one of these factors might be explained away. Taken them all together, there's no way these could be the same incidents. So we're supposed to look at the evidence in the record, the testimony of all these various witnesses, and from the perspective of the trial court, Judge Gawne, who heard this as a bench trial, say that the evidence is so improbable or unsatisfactory as to create reasonable doubt. That's exactly the standard. That's exactly what I'm asking. And a case in which he found that that standard was appropriate as to another co-defendant. So he thinks there's enough evidence to one and not enough evidence to the other, and we're supposed to throw the other one out too. That's exactly what I'm asking. So that would be issue one. That's issue two. The state failed to prove aggravated reality because it failed to prove that the co-defendant, that Coleman, was an officer. Before addressing the video, I would note that context is important here. The state's theory was that there was a shooting that evening. Reese had very good reason to fear that a civilian was looking to kill him. So he had good reason to fear that Coleman, who whatever else he was, was in more civilian clothes, was driving a civilian car, and was an approaching gunman. Even in this context, the state could not meet its burden, and I would say that we have met what you were pointing out. Again, we go through the same procedure. We don't pay any attention to the state trooper's video. We do. We absolutely pay attention to the state trooper's video. That's what my case is based on. That doesn't take away the shooting. And then you say, well, it's a game war. Come on. Isn't the point that you're making that there's no way that the person in the maroon car would know that this man is a police officer? That's the point I'm about to make. The point I'm making is that he had good reason to be very worried. Yes, and that also in audio. There is an audio. The audio says that Coleman announced. Well, if you hear on that video, you hear sounds of three different points, one, two, and three. If you hear in one or two that he clearly said police, then my argument is a lot weaker. I was in that video at least 15 times. No, at least 12 times. And you cannot hear the word police until after Coleman fired the shot. But the testimony is that Officer Coleman said that he identified himself verbally and with his badge and that the state trooper also confirmed with him that he was an officer and heard him say that he announced his office. Well, he did announce it. Everyone agrees he announced his office. The trooper didn't say he announced his office before the shots. And that's important because Coleman said. The whole point is that it's an argument in a cell case that the allegation is that Reese pointed a gun at Coleman. And if Coleman only announced his office after he fired the shots, then that doesn't mean that Reese would have known he was an officer before he fired his shots. And I don't hear on the tape that Coleman announced his office before the shots. In other words, before Reese would have pulled his weapon. So that's how I read the video. So the other thing is, this is a mental state issue. Reese did not know that Coleman was an officer. The whole thing takes place in maybe a second and a half. This also was not raised in the trial court. It absolutely was not raised in the trial court. However, this is a sufficiency argument, and sufficiency arguments cannot be forfeited. Any other argument, if I have a speedy trial argument or an evidentiary argument, is forfeited, and I can raise it as plain error, which obviously is a somewhat higher standard. There is no plain error for sufficiency cases. That's ENOC. You don't have to raise it. It doesn't make sense that my burden would be higher or higher in a sufficiency case than in, say, a speedy trial case. So there is no forfeiture issue here. So ENOC and my counseling case very clearly say you cannot forfeit this issue. Pardon me while I get back. Now, Justice Levin, you also mentioned that Coleman is clearly his dad. A couple of points on that. First, on the Coleman testimony, Reese did not – pardon me. I'm off the stove now. I'm very sorry. No problem. I can barely talk. Tis the season. Okay. First, on the Coleman testimony, Reese did not see before pointing his gun. Before Coleman got out of his car, he testified, Reese and Coleman both slid down below the window to hide, apparently to hide from the state trooper. Reese then turned and pointed his weapon. So before pointing his weapon, Reese would not have been looking at Coleman or his badge. Now, there's no testimony that when Coleman fired, Reese continued to point his weapon and that he was not shocked and suggested he dove down and did not see Coleman. And there's no proof – further, there's no proof that when he pointed his weapon, Reese saw Coleman's stock. Now, the important point here is that Coleman testified that he held off his stock continuously throughout the incident, not just at several points. In the video, you can see for about six seconds, you can see Coleman's hands. And there's nothing – this is nighttime. There's nothing blinking out of the metal. You can't see it. At the end of the video, he holds out his hand. He testifies he's showing his stock. You cannot see in the video that there's any kind of stock there. So this question often considered Reese's self-interest. Even the most hardened criminal, maybe especially the most hardened criminal, knows the dangers of pointing a gun at an officer. On the other hand, if you think a civilian gunman is coming for you, it makes perfect sense to be pointing out you're going to defend yourself. This question should also consider a couple of other points. First, this was right by the Eisenhower, and you can hear the roller doors muffling, you know, sounds people make. And you should also consider Coleman's self-interest. Coleman has just fired about ten shots into a vehicle. He had shot Brian in the head, and he had to justify his actions one way or the other. And he couldn't keep his story straight. For example, at one point, he claimed to have said police stop before seeing Reese's gun, and later he said police stop after seeing Reese's gun. Now, this is important because whether he announced his office is important to know or when he announced his office is important to know is important for Reese's state of mind. This is a basic, but what light are we supposed to take all this evidence in? Favorable to you? I mean, it seems like you want to go through and get very picayune and find one little inconsistency and magnify it and say that that proves that there's insufficient evidence. Well, I would say two things. First of all, I would say that I don't think it's picayune. I think I'm saying what the video shows. Secondly, there is case law, and I didn't say that I can have it on you just as ever. I sent it over this afternoon saying that the deference in insufficiency cases is less when you're looking at documents or videos, and I will provide that. All right, so in summary, the state of mind of Reese's state of mind, it didn't have nearly enough evidence, and the circumstantial evidence suggests that he did not know. So unless this court has any questions about issues three or four, I would ask that this court rehearse on the two convictions or grant a clinical hearing. Thank you. Thank you. May it please the court, counsel, it has to be a very rare case for this court to be reviewing today, a case where you have testimony of an off-duty Chicago police officer in Illinois State Trooper, and everything is on video. You couldn't orchestrate a more documented case than this one, and yet here we are today on a reasonable doubt claim. This isn't a reasonable doubt claim. This is appellate counsel attempting to retry this case, asserting a different theory on appeal, and not just being picky, but wholly and improperly ignoring the standard of review on this case. The defendant was pretty well represented at trial. He was very well represented at trial. And in fact, the defense counsel did everything he could to contest the evidence. But what is a defense attorney to do in a case like this, where what are the odds that four gangbangers pull up and park literally right next to a police officer as he's going to move his car from one side of the street to the other? If it wasn't for the video at Crane High School, this would almost seem impossible to believe. And yet it isn't. It would be impossible to believe that two people would get out of a car and fire in different directions when there doesn't seem to be any activity going around on that street. And yet there it is. It would seem impossible that the gangbangers would get into the car and right around the corner would be a trooper with an active dash cam. And yet, here we are. The ignorance of the standard of review in this case is impermissible and should be rejected by this court. As your justice noted, this is a mask for irrelevance. There is no evidence of two separate shootings. And, in fact, the only bouncing ball in this case, which is captured on everybody's video, shows that, in fact, Mr. Dorsey was shot by the co-defendant, Reese, in this case. Because when we look at all of the evidence in the light most favorable to the state, Officer Coleman passed Mr. Dorsey. He didn't even know Dorsey was outside because the officer was facing northbound. Dorsey was southbound. And as Officer Coleman does the U-turn to follow the four people in the maroon car, he sees Dorsey not lying on the ground, not passed out, but on the ground because he was crouching from gunfire and had just been shot. And Mr. Dorsey yelled aloud, those MFers just shot me. There are two different shootings in this case. That wasn't the evidence. That's not even close to what the evidence is. And at the motion for the Franks hearing, defense counsel even seemed to concede that the videotape from Crane High School captured the shooting of Dorsey. Now, I don't want to misrepresent, so I'm going to read you what defense counsel said when he was explaining why he didn't file a motion to suppress statements. Defense counsel said, the co-defendant was alleged to have fired a weapon at Mr. Dorsey, who was the victim in this case and who was shot in the rear end. Those images were caught on videotape. That's at the record on page T9 through 12. It's in our brief. Now, I don't know if defense counsel was necessarily conceding that the Dorsey shooting is on video. When I looked at the video, it's pretty grainy. I wasn't ever able to see whether or not Mr. Dorsey was on that video. Certainly nobody testified to the video of Mr. Dorsey being shot. But be that as it may, that was not a contested issue at trial. This, the notion that there are two different shootings at two different times, is simply a new theory being argued on appeal. It is improper to try this case before this court in launching a new defense. It's improper and should be rejected. I would like just to also mention that the co-defendant Gates, Justice Lattin, was acquitted, not because of a timeline or anything like that. He wasn't there. That's why Judge Garn acquitted him, and probably so. There's no discrepancy in any of the evidence in this case. The fact that Mr. Dorsey believed that he was shot around 1030, it's just a mistake. In light of this evidence, which is irrefutable, you don't have to believe anybody's testimony. It's on video, several videos. Also, as to the notion that the co-defendant Reese didn't know that Officer Coleman was the police, it's simply refuted repeatedly by this record, and again is launching into complete conjecture and speculation as to Defendant Reese's state of mind. Also completely improper to be arguing before this court. Officer Coleman testified to the spot in the video from Trooper Mayorkamp's dash cam video. He testifies on the record right here. That's when I'm announcing my office. This is well before the shots are fired. This is where I get out of my car with my star in my hand, and he testifies he announced his office and displayed his star three separate times. When getting out of his car, while he was outside of his car, and while he was approaching the Buick. And more significantly, the defendant and co-defendant Reese are in the back seat, sliding down to avoid any problems with the trooper, who happens to be standing to his right. There is no evidence. At what point do they see Coleman coming out with the badge? I don't know when they see it, but apparently they react to the sound of Officer Coleman announcing his office. When they slide back up, co-defendant Reese turns around and points the gun at Officer Coleman. They're just sliding down to avoid the officer. How do you know? They're sliding down to avoid, I think, the trooper. Right. Right. So when do they see Coleman? When do they identify Coleman as an officer? I think when they hear him, police stop. How do they know it's not the officer they're aware of? I don't know what's in their minds. That's the whole point. They're down. They can't see. They hear cop trooper. Is it coming from the state trooper? Is it coming from this guy in the back with a gun? Right. Now, also, the trooper is over on the sidewalk. He's not standing in the lane of traffic. He's on the passenger side of the stopped car. And Officer Coleman is far behind. Now, I can't speculate as to what Reese heard or where he thought that direction was. But isn't that important if you're convicting him of attempting to kill Coleman? Well, of course it is because we have established that he knew that he was firing a police officer. And the evidence in this case clearly establishes that. Not only does Officer Coleman testify that the whole time he's got his gun in his badge and he's screaming, police, police, police, police, police, police. But they were looking to the mindset of the defendant. And you're saying they're scrouched down and they hear these voices, but not necessarily. They hear police, police, police, police, stop, police, police, police, stop. I grant that. I grant that. Now, but is the state trooper saying it or is it the guy with the gun? It doesn't matter. It doesn't matter. Now, the theory, defendant's new theory, is that there's a weapons focus issue. There's no evidence of that. That's a new theory on appeal, that he believes gangbangers are after him. There's no evidence of that. That's complete conjecture. Wouldn't it be kind of ridiculous that a gangbanger would be approaching that car? Yes. When you've got a police officer, not even counting Coleman, but the other officer standing there. The trooper is right there. There's no validity to that assertion. Correct. And another point, Justice, is that the whole sliding down theory, these defendants are trying to secrete themselves in the car. The second they hear noise, and the only noise that's in this record is police, police, police, stop that car, that's when Reese apparently sits back up, turns around, Coleman's there, badge, gun, and this is verified by Trooper Mayerbeck, who also testifies that Coleman identified himself as the police officer well before. So he turned around and commits a murder in front of the cop, the state trooper. I'm sorry? So he turned around with the state trooper's camera running and commits a murder on camera. Well, he could have if he would have fired at Coleman. I'm not sure what you're asking. He didn't just aim the gun. He just aimed, but I don't know. The attempt, well, yeah. Yeah. No, he didn't. Reese never fired a shot at Officer Coleman, just pointed the gun at him, and then Officer Coleman. That's no crime no one can take. Absolutely. Absolutely. Now, you can't really see that on the trooper's dash cam. That's not on the dash cam. That's the testimony that's corroborated by Trooper Mayerbeck and then Officer Coleman as well. The point being, this court is in an unusual position today with the evidence it finally now has. The evidence, when viewed in a light most favorable to the people, undoubtedly and clearly establishes defendants' guilt of all of these crimes beyond a reasonable doubt. For all the reasons argued here today and those in our brief, the people respectfully request that this court affirm all of defendants' convictions. Thank you. Two points I would add, Your Honor. Thank you. First of all, when you can hear, the point here is not Coleman did, but Reese's state of mind. When you hear police, police, police, according to Coleman, he had already started firing his gun. According to Coleman's story, Reese pointed his weapon before that. So when you hear police, police, police, it's too late for that. Now, Coleman testifies that he said police before him. For all I know, it's true. There's no reason to doubt it. But the point is it's what Reese heard. And if you can't hear it on the video, and I say you can't hear it on the video, there's no reason to think that Reese, who was in a car with his doors, with his windows closed, and Coleman testified that he saw the windows closed back in the first scene. I just don't see how that's not a request for us to reweigh the evidence in a light more favorable to your guy. It isn't. I'm asking you to take the evidence as true, that Coleman testified, that Coleman said. Because otherwise, no defendant would ever win a sufficiency case, but sometimes they do. Sometimes this court finds that the evidence is insufficient. And that involves, at some level, reweighing the evidence. If you didn't have to reweigh the evidence on a low level, there would never be a reversal. I understand that, but my point, perhaps sarcastically, was that you're suggesting that we reweigh it in a light more favorable to the defendant rather than in a light more favorable to the state, which is the situation, of course, that we're in. Right. No, I'm saying in a light more favorable to the state, there's just too little here to say that a reasonable fact finder could find beyond a reasonable doubt that Reese had the state of mind that he had. Okay. So the only other comment is the state is repeatedly saying that my argument is not only incorrect without merit, but improper because we're arguing a news theory on appeal. So I need to talk about that for just a second, if you don't mind. Sure. This case is much like the case I cite, the People v. Thompson case, where it's not the defendant arguing secondary murder based on self-defense on appeal. The defendant is arguing secondary murder based on provocation, specifically mutual combat. The state argued, as it does here, that there was a news theory on appeal. This court rejected this forfeiture argument because this argument went to the sufficiency of the evidence. It could not be forfeited. And in this situation, it's even better for the defense than in Thompson. At least Thompson, it was an affirmative defense they were raising. And here we are in affirmative counsel. We're basically saying on the state's theory, on the state's evidence, we failed to prove its case. So for those reasons, we would ask that this court reverse both directions. Thank you. Thank you. We'll let you know.